IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN E. BOYER,<br><br>    Plaintiff,<br><br>v.<br><br>DEBORA MOHRING and BYRON RICE,<br><br>    Defendants. | CIVIL ACTION<br>NO. 12-2267 |

**OPINION**

**Slomsky, J.**                                 **January 10, 2014**

**I.  INTRODUCTION**

  Plaintiff Brian Boyer, proceeding pro se, filed this lawsuit against his sister, Debora Mohring, and his Parole Officer, Byron Rice (collectively "Defendants"). Plaintiff complains that, without his permission, his sister unlawfully searched his home and then illegally seized and searched his cell phone. He also complains that his Parole Officer unlawfully searched his home and illegally seized the same cell phone, because he did not obtain a search warrant before taking custody of the phone. Finally, Plaintiff complains that his Parole Officer illegally searched the phone. Based on retrieved images stored on the phone, Plaintiff was subsequently arrested for possession of child pornography.

  Plaintiff initially named two additional Defendants in this case, Sergeant Vega and Detective McQuate, but voluntarily dismissed the charges against them on November 5, 2013. (Doc. Nos. 44, 51.) On July 1, 2013, Plaintiff also voluntarily dismissed one claim against Defendant Rice for deprivation of Plaintiff's Fourteenth Amendment right to due process. (Doc. No. 24 at 8.) Thus, two Defendants remain, Defendant Mohring and Defendant Rice. As noted,

1

Plaintiff alleges in his Complaint that both Defendants infringed upon his Fourth Amendment rights by conducting an illegal search and seizure of his property in violation of 42 U.S.C. § 1983.

Defendants Mohring and Rice have filed separate Motions to Dismiss the Complaint. (Doc. Nos. 20, 41.)  Before being dismissed as Defendants, Vega and McQuate filed a joint Motion to Dismiss. (Doc. No. 16.)  Defendants Rice and Mohring have adopted by reference the arguments made by former Defendants Vega and McQuate in their Motion to Dismiss.  (Doc. No. 20 at 7; Doc. No. 41 at 3.)  Plaintiff filed Responses in Opposition to the Defendants Rice, Vega, and McQuate's Motions to Dismiss (Doc. Nos. 23, 24)[1].  On November 22, 2013, the Court held a hearing on the Motions.  For reasons that follow, the Court will grant Defendants Mohring and Rice's Motions to Dismiss the remaining claims.

## II. BACKGROUND

The following facts are set forth in the Complaint.  Only the facts relevant to the claims of the unlawful searches and seizures made against remaining Defendants Mohring and Rice will be discussed.

In September 2010, Plaintiff was a parolee under the supervision of Defendant Rice, his Parole Officer.  At that time, Plaintiff's sister, Defendant Mohring, signed what is known as a "Statement of Residence," in which she agreed to provide living quarters for Plaintiff for a minimum of six months when he was released on parole.  In the "Statement of Residence," she agreed to cooperate with parole supervision staff.  The "Statement of Residence" stated:

> I agree to take a friendly interest in this person as opportunity affords, and I shall cooperate with parole supervision staff by reporting any irregularities that may come to my attention.

---

[1] Plaintiff did not respond to Defendant Mohring's Motion to Dismiss.

(Doc. No. 8 at Ex. A.) According to the Complaint, Defendant Rice asked Defendant Mohring to report to him any parole violations by Plaintiff. (Id. at ¶ 8.)

During the first week of March 2011, Defendant Mohring entered Plaintiff's residence without permission.² (Id. at ¶ 29.) She searched the residence and found what she believed to be child pornography. (Id. at ¶ 32.) Defendant Morhing reported the suspected child pornography to Defendant Rice. (Id. at ¶¶ 32, 36.) Defendant Rice then reported this information to his supervisor, who authorized a search of Plaintiff's property pursuant to 61 Pa.C.S § 6153(d).³ (Id. at ¶ 36.)

On March 7, 2011, Defendant Rice, along with Defendant Mohring and several law enforcement agents, searched Plaintiff's residence. Although they did not find child pornography, they took Plaintiff into custody for various other parole violations. (Id. at ¶¶ 37-46.) Between March 8 and March 11, 2011, while Plaintiff was in custody, Defendant Mohring entered Plaintiff's home and seized his cell phone. (Id. at ¶ 56.)⁴ On March 11, 2011, Defendant Mohring contacted Defendant Rice to inform him that she had Plaintiff's cell phone in her possession, and that she believed it contained images of child pornography. (Id. at ¶ 57.) Defendant Rice then contacted Sergeant Vega, his supervisor, who advised Rice to schedule a

---

² In the Complaint, Plaintiff states that he and Mohring jointly own the house in which he was living. (Doc. No. 8 at ¶ 56.) Mohring lived at a different house on the same street. (Id. at ¶ 20.) Plaintiff also states that he asked Mohring to enter his home to feed his cat. (Id. at ¶¶ 16-19.) To do so, Plaintiff gave permission to his landlord to give Mohring the keys to his house. (Id. at ¶ 19.) Plaintiff explains that this permission was "for the purpose of feeding the cat only," and did not require Mohring to enter his bedroom. (Id.)

³ Under 61 Pa.C.S § 6153(d), parole agents are granted authority to conduct personal searches of parolees when they have reasonable suspicion that the parolee may possess contraband.

⁴ In the Complaint, Plaintiff alleges that the cell phone was stolen by his sister. (Doc. No. 8 at ¶ 56.)

meeting with Defendant Mohring so that she could turn over the cell phone to him. (Id. at 58.) On the same day, Rice met with Defendant Mohring and was given custody of Plaintiff's cell phone. Rice did not obtain a search warrant prior to receiving the phone. He then turned the phone over to Detective Vega. (Id. at ¶ 61-62). Thereafter, Sergeant McQuate applied for a search warrant to search the cell phone. (Id. at ¶ 63.)

On May 19, 2011, a search warrant was issued by a Magisterial District Judge based on a violation of 18 Pa. C.S.A. 6312 (sexual abuse of children), authorizing law enforcement to search the phone for images of child pornography.[5] While searching the phone, the police found images of child pornography. (Doc. No. 16, Ex. B.) On September 26, 2011, Plaintiff was arrested and charged with one count of possession of child pornography. (Doc. No. 8 at ¶ 71.) This charge was withdrawn in April 2012, but seventeen additional counts of possession of child pornography were subsequently filed against Plaintiff. (Doc. No. 16, Ex. B.)

In April 2012, Plaintiff commenced this action by filing an In Forma Pauperis petition, but requested that the action be stayed pending the resolution of the related criminal charges. (Doc. Nos. 1, 4.) The Court agreed. (Doc. No. 5.) On January 16, 2013, Plaintiff pled guilty to one count of possession of child pornography. (Doc. No. 16, Ex. B.) On March 7, 2013, Plaintiff petitioned this Court to remove the case from suspense, which the Court did, and then he filed the instant Complaint. (Doc. Nos. 6, 7, 8.)

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to

---

[5] The warrant is attached to the Complaint as Exhibit E, along with the Affidavit of Probable Cause.

defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n. 27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Despite Iqbal's heightened pleading requirements, the district court must be more flexible in its interpretation of pro se pleadings. "The obligation to liberally construe a pro se litigant's pleadings is well-established."  Higgs v. Atty. Gen. of the U.S., 655 F.3d 333 (3d Cir. 2011) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  This liberal construction allows the court to "apply the relevant legal principle even when the complaint has failed to name it."  Mala v.

Crown Bay Marina, Inc., 704 F.3d 239 (3d Cir. 2013) (citing Dluhos v. Strasberg, 321 F.3d 365, 369, 244 (3d Cir. 2003)). However, much of the leeway granted a pro se plaintiff is procedural rather than substantive: "there are limits to our procedural flexibility. . . . pro se litigants still must allege sufficient facts in their complaints to support a claim." Id.

IV. ANALYSIS

    A. Plaintiff's Claims Against Defendant Rice

        1. Plaintiff's Claim of Illegal Search and Seizure Against Defendant Rice is Barred by Heck v. Humphrey

Plaintiff contends that Defendant Rice violated his Fourth Amendment rights when he unlawfully searched Plaintiff's residence and illegally seized and then searched his cell phone. Defendant Rice argues that Plaintiff's claim is barred by the Supreme Court's decision in Heck v. Humphrey, which bars actions challenging the basis for a conviction that has not been overturned. 512 U.S. 477 (1994).

In Heck v. Humphrey, the Supreme Court held that a plaintiff may not challenge the validity of his conviction or the duration of his sentence pursuant to Section 1983, unless one of the following exceptions applies. The conviction or sentence must have been either (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such determination; or (4) called into question by a federal court's issuance of a writ of habeas corpus. Id. at 487. "The prisoner cannot use § 1983 to obtain relief where success *would necessarily* demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 74-75 (2005) (emphasis in original).

Defendant Rice was given Plaintiff's cell phone after it was seized by Defendant Mohring. He then searched Plaintiff's cell phone pursuant to a search warrant issued by a Magisterial District Judge, and discovered that it contained images of child pornography. Based

6

on this information, Plaintiff was arrested and charged with possession of child pornography. On January 16, 2013, Plaintiff pled guilty to this charge.

In the Complaint, Plaintiff now challenges the legality of the underlying search of his home and search and seizure of his cell phone. This challenge directly attacks the validity of his conviction, which is based on that search and seizure, and therefore violates Heck v. Humphrey. Unless Plaintiff can demonstrate that his claim falls under one of the exceptions noted above, his claim against Rice must be dismissed. Here, Plaintiff's conviction has not been reversed on appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Therefore, none of the exceptions to the Heck v. Humphrey rule applies. Accordingly, Plaintiff's constitutional claim against Defendant Rice for the illegal search and seizure of his cell phone is barred by Heck v. Humphrey and will be dismissed.

### 2. Plaintiff's Factual Allegations Do Not Establish a Fourth Amendment Violation Because Defendant Rice Had Reasonable Suspicion to Search the Home and the Cell Phone and Even Obtained a Search Warrant Prior to the Search of the Phone

Plaintiff's claim against Defendant Rice fails for another reason. Under Pennsylvania law, a parole officer needs reasonable suspicion to conduct a warrantless search or seizure of a parolee's home or property, along with prior approval from a supervisor. 61 Pa.C.S. § 6153(d); see also U.S. v. Baker, 221 F.3d 438, 443 (3d Cir. 2000). While this search and seizure must meet the reasonableness requirements of the Fourth Amendment, the Supreme Court has applied a balancing test to weigh the potential intrusion on a parolee's privacy against the governmental interest at stake. See Samson v. California, 547 U.S. 843, 848 (2006); U.S. v. Knights, 534 U.S. 112, 118 (2001). The Court has explained that parolees "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance

of special [probation] restrictions.'" Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) (citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972)).  Therefore, a parolee's diminished expectation of privacy is justified by the state's substantial interest in the supervision of its parolees and the prevention of recidivism.  Samson, 547 U.S. at 850, 855.  Specifically, the reasonable suspicion standard for the search and seizure of a parolee applies when "special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable." Griffin, 483 U.S. at 873.

   Here, Plaintiff arranged for Defendant Mohring to sign a "Statement of Residence," in which she agreed to provide him with housing upon his release on parole, and to cooperate with parole supervision staff should she became aware of any parole violations by Plaintiff.  Pursuant to this agreement, when Defendant Mohring suspected that Plaintiff was violating his parole, she contacted Defendant Rice to inform him of the potential violation (possession of child pornography).  As Plaintiff's parole officer, Rice then had a duty to investigate the allegations.  Based on the information provided by Mohring, Rice contacted Sergeant Vega, who gave Rice permission to seize the cell phone from Mohring.

   The information provided by Defendant Mohring gave Rice reasonable suspicion to believe Plaintiff was violating his parole and the authority to seize the cell phone, even without a search warrant.  Defendant Rice did not initially search the cell phone after seizing it from Mohring, but instead turned it over to Sergeant McQuate, who then obtained a search warrant from a neutral Magisterial District Judge to search the phone.

   After a search warrant was issued, based on facts meeting the probable cause standard, the cell phone was searched.  Thus, Defendant Rice not only had reasonable suspicion to seize the cell phone, but also had probable cause to search it pursuant to a search warrant.  For all

these reasons, even when viewing the evidence in the light most favorable to Plaintiff, no plausible Fourth Amendment violation under Section 1983 has been established by Plaintiff against Defendant Rice.

### 3. Defendant Rice is Entitled to Qualified Immunity

In addition, Defendant Rice is also entitled to the benefit of qualified immunity for the claim asserted against him. Qualified immunity shields government officials from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." George v. Rehiel, No. 11-4292, slip op. at 12 (3d Cir. Dec. 24, 2013) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Parole officers are executive officers charged with carrying out the probation and parole policies of the state, and as such may be protected by qualified immunity. Donaldson v. Mugavero, 126 Fed. Appx. 63, 65 (3d Cir. 2005). Qualified immunity protects "all but the plainly incompetent [executive officers] or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011). In order for the official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. Accordingly, in order to overcome the defense of qualified immunity here, Plaintiff must allege facts showing that the conduct of Defendant Rice (1) "violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." However, the Court need not undertake the inquiry in that order. Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Here, Defendant Rice did not violate a statutory or constitutional right of Plaintiff. Defendant Mohring informed Rice that she believed child pornography was on Plaintiff's cell phone, which she had in her custody. Before obtaining the cell phone, Defendant Rice sought

9

and was given permission by his supervisor to take custody of the phone from Mohring. Mohring's information by itself gave Rice reasonable suspicion to believe that contraband was on the phone. Thus, Defendant Rice acted pursuant to 61 Pa.C.S. § 6153(d), which provides that a Parole Officer with reasonable suspicion and the approval of his supervisor, may conduct a warrantless search of a parolee's property. Accordingly, Rice did not violate Plaintiff's statutory or constitutional rights when he obtained the phone.

Thereafter, a valid search warrant, which was supported by probable cause that the cell phone contained child pornography, was obtained in order to search the cell phone. The subsequent search turned up evidence of child pornography, and Plaintiff thereafter entered a guilty plea in state court to possession of the same. Under these circumstances, Defendant Rice is entitled to the benefit of qualified immunity because no statutory or constitutional right of Plaintiff was violated by Defendant Rice. Because Plaintiff has not alleged facts that make out a violation of his statutory or constitutional rights, the Court need not proceed to the second step of the qualified immunity analysis to determine whether that right was clearly established at the time of the challenged conduct. See Scott v. Harris, 550 U.S. 372, 377 (2007).

    **B.**     **Plaintiff's Claim Against Defendant Mohring Fails**

        **1.**     **Defendant Mohring Did Not Act Under Color of State Law**

Plaintiff alleges that his sister, Defendant Mohring, acted under color of state law by cooperating with Defendant Rice, searching his residence, seizing his cell phone, and viewing its contents, all in violation of 42 U.S.C. § 1983. (Doc. No. 8 at 2-3, 13-14, 19-20).

To establish a claim under Section 1983, a plaintiff must allege a violation of a constitutional right and must show that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A private actor can be

considered a state actor in one of two ways. "The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant." Dickerson v. DeSimone, Inc., No. 09-1551, 2011 WL 3273228, at *2 (E.D.Pa. Aug. 1, 2011) (quoting Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 1984)). "The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management." Id. In order to establish the requisite level of joint participation and collaboration, a plaintiff must aver the existence of a "pre-arranged plan [between the police and a private entity] by which the police substituted the judgment of [a] private part[y] for their own official authority." Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984). The Third Circuit has noted that "the critical issue . . . is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." Cruz, 727 F.2d at 82.

Here, Defendant Mohring is not a law enforcement agent or any other kind of state actor. To establish a claim for illegal search and seizure against Defendant Mohring, a private citizen, Plaintiff must show that she acted under color of state law. To do so, Plaintiff must allege plausible facts to show that Defendant Mohring was involved in conspiratorial or concerted action with Defendant Rice, a law enforcement agent. The facts alleged in the Complaint, however, do not establish that Defendant Mohring engaged in any concerted action with Defendant Rice.

As noted above, Plaintiff was a parolee who was subjected to certain conditions for the duration of his parole. A parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." U.S. v. Thomas, 729 F.2d 120 (2d Cir. 1983). In Pennsylvania, a parolee is

required to live at the residence approved by the Board of Parole and may not change residences without the written permission of parole supervision staff. 37 Pa. Code § 63.4. Plaintiff understood that as a condition of his release, he "needed to provide a home plan stating his legal residence." (Doc. No. 24 at 2.) He arranged for Defendant Mohring to provide him with housing and to sign the Statement of Residence, which he then provided to parole supervision staff. Thus, Plaintiff was aware of what the Statement of Residence required, and he knew that by providing him with housing, Defendant Mohring also agreed to cooperate with parole staff and to report any irregularities to them.

      Plaintiff contends that Defendant Mohring "continuously and recklessly invaded and maliciously searched Plaintiff's personal residence and property without just reason while reporting results to law enforcement/parole agent Byron Rice for the purpose of having Plaintiff removed from residence." (Doc. No. 8 at ¶ 79.) According to the Complaint, however, Defendant Mohring contacted Defendant Rice when she suspected that Plaintiff had violated parole, and then turned Plaintiff's cell phone over to him because she believed it contained illegal images. While she may have searched Plaintiff's home without his permission and reported the purported contents on the cell phone to Defendant Rice, this does not rise to the level of concerted action. The Affidavit of Probable Cause states, "Debora Lee Mohring stated she entered the cell phone on her own free will, and was not directed by law enforcement or any other agent to do so." (Doc. No. 8, Ex. E.) This is also confirmed by Defendant Mohring's written statement:

> The next day I went up to the house that we own. Brian [Plaintiff] was living in one of our homes [sic] to see if I could get some answers as to what is going on. I saw his phone on the bed[,] I turned it on[,] I saw texting back and forth regarding drug shipments – just general drug conversations. Then I went in to his pictures and I was very shocked to see the pictures that were on. . .

12

> It was decided to turn the phone over to Byron [Rice]. We (Byron [Rice]) and I agreed to meet at my work. I then signed a paper turning the phone over.

(Doc. No. 8, Ex. B.)[6]

No facts are alleged that Defendant Rice instructed Defendant Mohring to search the house and seize the cell phone, or that the seizure was part of any kind of concerted plan. The only plan between Defendants was the general cooperation that Defendant Mohring agreed to as part of the Statement of Residence, which was lawfully imposed on Plaintiff as a condition of his parole. As stated above, probation authorities may impose conditions on parolees and ask for cooperation in reporting any parole violations. By asking Mohring to "take a friendly interest" in a parolee and "cooperate with parole supervision staff by reporting any irregularities" that come to her attention, the parole staff was not asking her to engage in concerted action. Mohring was not asked to take an active role in investigating parole violations. Rather, parole authorities merely asked her to alert them if she noticed any potential irregularities. Even if Mohring did take it upon herself to search Plaintiff's home and investigate his parole status, she did not do so at the instruction of Defendant Rice. Thus, Mohring's actions were not part of any concerted activity.

This is further supported by the Affidavit of Probable Case, which states that Mohring did not act on instructions from Defendant Rice when she turned over the cell phone. Instead, she reported the phone to Rice of her own free volition and pursuant to her own judgment. A private entity who reports a plaintiff to the police is not considered a state actor. Moore v. Marketplace

---

[6] As stated above, Plaintiff asked Mohring to enter his home to feed his cat. (Doc. No. 8 at ¶¶ 16-19.) To do so, Plaintiff gave permission to his landlord to give Mohring the keys to his house. (Id. at ¶ 19.) Plaintiff explains that this permission was "for the purpose of feeding the cat only," and did not require Mohring to enter his bedroom. In addition, Plaintiff also alleges that he and Mohring jointly owned the house in which he was living. (Id. at ¶ 20.)

Rest., Inc., 754 F.2d 1336, 1352-53 (7th Cir. 1985); see also Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Communications between a private actor and a state actor, without facts supporting effort or plan between the parties, are insufficient to make the private party into a state actor.")  While Defendant Mohring agreed to cooperate with parole supervision staff regarding Plaintiff's parole obligations, Rice did not ask Mohring to substitute her judgment for his own official authority.  As such, Mohring was not draped with the power of the state.

In the Complaint, Plaintiff alleges that Mohring contacted Rice on several occasions, in addition to reporting the cell phone.  Specifically, Plaintiff claims that Mohring contacted Rice once when she suspected that Plaintiff travelled outside the county and once when she thought that he had child pornography in his home, and also had a secretive discussion with Rice on the day Plaintiff was taken into custody. (Doc. No. 8 at ¶¶ 27, 36, 47.)  However, merely alleging that a private party regularly interacted with a state actor does not create an inference of an agreement to violate a plaintiff's rights.  Kramer v. City of New York, No. 04-106, 2004 WL 2429811, at *7 (S.D.N.Y. Nov. 1, 2004).  Further, communications between a private party and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party into a state actor.  Fisk v. Letterman, 401 F. Supp. 2d at 377.  "Merely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor."  Cooper v. Muldoon, No. 05-4780, 2006 WL 1117870, *2 (E.D.Pa. Apr. 26, 2006); see also Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 318-19 (E.D.Pa. 1998) (private entity who reported possible crime to police not state actor).

### 2. Defendant Mohring is Entitled to Qualified Immunity

In the alternative, even if Defendant Mohring were considered a state actor, qualified immunity would protect her from liability. The Third Circuit has held that a private person alleged to have conspired with an immune state official cannot be held liable, since he is conspiring with someone against whom a valid claim could not be stated. Waits v. McGowan, 516 F.2d 203 (3d Cir. 1975) (A private investigator for a public defender is immune from suit in the same way that "a private person alleged to have conspired with a state judge and attorney who are entitled to immunity cannot be held liable, since he is not conspiring with persons acting under color of law against whom a valid claim could be stated.") (quoting Hill v. McClellan, 490 F.2d 859, 860 (5th Cir. 1974)); McIntosh v. Garofalo, 367 F.Supp. 501, 505 (W.D. Pa. 1973) ("[I]f one party to the alleged Civil Rights Act conspiracy is immune from liability, no cause of action can be stated against the private person with whom he is alleged to have conspired.")

As held above, Defendant Rice is entitled to qualified immunity. Since Defendant Mohring is a private actor accused of conspiring with an immune state official, Defendant Mohring could not be held liable for that state action.

### V.   CONCLUSION

Because Plaintiff has not satisfied the elements of a claim for illegal search or seizure under 42 U.S.C. § 1983 against either Defendant Rice or Defendant Mohring, and for the additional reason that both Defendants are cloaked with qualified immunity, the Court will grant Defendants' Motions to Dismiss. An appropriate Order follows.